

```
Priority    X
Send        X
Enter       X
Closed      ___
JS-5/JS-6   ___
JS-2/JS-3   ___
Scan Only   ___
```

UNITED STATES DISTRICT COURT

CENTRAL DISTRICT OF CALIFORNIA

| | |
|---|---|
| PERFECT 10, INC., <br><br> Plaintiff, <br><br> v. <br><br> NET MANAGEMENT SERVICES, et al., <br><br> Defendants. | NO. CV 02-3735 LGB (SHx)/ <br> CV 02-8413 LGB (SHx) <br><br> ORDER DENYING DEFENDANT'S MOTION TO DISMISS FOR LACK OF PERSONAL JURISDICTION |

## I. INTRODUCTION

This case involves allegations of copyright and trademark infringement, as well as unfair competition and violation of rights of publicity, in connection with adult websites on the internet. Plaintiff is the publisher of adult entertainment magazine <u>Perfect 10</u>. Defendants are the owners of several adult websites that Plaintiff alleges infringe on Plaintiff's copyrights, trademarks, and rights of publicity. Plaintiff has also alleged RICO violations. In the instant motion, Defendant

John Bennett, Jr. moves to dismiss the case against him for lack of personal jurisdiction.

**II. FACTUAL AND PROCEDURAL BACKGROUND**

Plaintiff Perfect 10, Inc. ("Perfect 10"), is the publisher of the well-known adult entertainment magazine Perfect 10. Second Amended Complaint ("SAC") ¶ 24. This magazine has a circulation of over 90,000 copies per issue. Id. Plaintiff also owns the website perfect10.com. Id. This website receives more than 100,000 unique visitors per month. Id.

Plaintiff is the owner of the Perfect 10 family of trademarks. Id. ¶ 27. These marks are used by Plaintiff in connection with its copyrighted products, including Perfect 10 magazine. Id. Plaintiff regularly employs models and hires photographers in connection with the creation of its photographic works. Id. at ¶ 29. As a regular part of its business, Plaintiff obtains assignments from its models of their rights to publicity in connection with these photographic works. Id. In addition, Plaintiff obtains assignment of copyrights from the photographers it hires. Id. The perfect10.com website is a subscription website. Id. ¶ 30. Consumers are given access to the content on the website in exchange for payment of a membership fee. Id.

Plaintiff alleges that Defendants own, operate, and/or control websites that engage in activity that infringes Plaintiff's trademarks and copyrights. Id. ¶ 31. The Defendants who have not been dismissed or defaulted are: Net Management

Services, LLC ("NMS"), Netvision Audiotext, Inc. ("Netvision"),I-Verification Systems, AVV ("I-Verification"), Virtual World Holdings, AVV ("Virtual"), Breakers Asset Holdings, AVV ("Breakers"), Dellwood Holdings, AVV ("Dellwood"), Interactive Gallery, Inc. ("IGI"), John Bennett, Jr. ("Bennett"), and Joseph B. Elkind ("Elkind").

Although Plaintiff voluntarily dismissed Defendant Bennett on October 28, 2003, Plaintiff added Bennett as a defendant in its Second Amended Complaint filed April 20, 2003. Plaintiff alleges that it dismissed Bennett in October because it lacked specific facts that would confer personal jurisdiction. However, in light of the additional information Plaintiff has garnered from Bennett's deposition, Plaintiff alleges that it now has sufficient facts of Bennett's contacts with California to confer personal jurisdiction.

### III. DEFENDANT BENNETT"S MOTION TO DISMISS FOR LACK OF PERSONAL JURISDICTION

Defendant Bennett asserts that the case should be dismissed as to him because he is a Florida resident and this Court lacks personal jurisdiction. Bennett MTD at 3. Plaintiff counters that Bennett has sufficient contact with California to establish specific jurisdiction and that Plaintiff's RICO claims confer jurisdiction over Bennett even if he does not have sufficient contacts to establish personal jurisdiction.

Defendant Bennett filed the instant motion to dismiss for lack of personal jurisdiction on June 27, 2003. Plaintiff

Plaintiff filed its opposition on July 21, 2003. Defendant Bennett filed his reply on July 28, 2003.

**4. Legal Standard**

While there is no applicable federal statute governing personal jurisdiction, the federal court applies the law of the state in which it sits. <u>Panavision Int'l v. Toeppen</u>, 141 F.3d 1316, 1320 (9th Cir. 1998). Because California's long-arm statute is coextensive with federal due process requirements, the jurisdictional analysis under federal due process and state law are the same. <u>Dole Food Co. v. Watts</u>, 303 F.3d 1104, 1110 (9th Cir. 2002).

The due process clause prohibits the exercise of jurisdiction over nonresident defendants unless those defendants have "minimum contacts" with the forum state so that the exercise of jurisdiction "does not offend traditional notions of fair play and substantial justice." <u>Int'l Shoe Co. v. Washington</u>, 326 U.S. 310, 316 (1945) (internal quotation omitted). In considering due process, the defendant's conduct and connection with the forum state must be such that he would "reasonably anticipate being haled into court there." <u>World-Wide Volkswagen Corp. v. Woodson</u>, 444 U.S. 286, 297 (1980). This requires some sort of "purposeful availment" of the privilege of conducting activities in the forum state. <u>Id.</u>

The Ninth Circuit has interpreted <u>International Shoe</u> and its progeny as allowing jurisdiction over a nonresident in two instances: (1) if the defendant's activities in the forum state

are substantial, continuous, and systematic, creating general jurisdiction, or (2) if the specific cause of action arises out of the defendant's more limited contacts with the forum state, creating specific jurisdiction. Doe v. Unocal Corp., 248 F.3d 915, 923 (9th Cir. 2001). Where, as here, there is no claim of general jurisdiction,[1] the court must apply a three-part test to evaluate the nature and quality of a defendant's contacts in connection with the causes of action alleged so as to determine whether specific jurisdiction is available. Id.

First, the nonresident defendant must do some act or consummate some transaction within the forum or perform some act by which he purposefully avails himself of the privilege of conducting activities in the forum, thereby invoking the benefits and protections of its laws. Id. Second, the claim must be one which arises out of or results from the defendant's forum-related activities. Id. Third, the exercise of jurisdiction must be reasonable. Id.

The plaintiff need only make a *prima facie* showing of jurisdictional facts. Dole, 303 F.3d at 1108. Although the plaintiff cannot simply rest on the bare allegations of the complaint, uncontroverted allegations in the complaint must be taken as true. Id. The operative complaint in this motion is Plaintiff's Second Amended Complaint. Conflicts between the parties over statements contained in affidavits must be resolved

---

[1] Plaintiff does not assert that the Court has general jurisdiction over Defendant Bennett in its Opposition. Therefore, the Court will presume that it does not have general jurisdiction over Bennett, and will only consider whether specific jurisdiction exists.

in favor of the plaintiff. Id.; AT&T v. Compagnie Bruxelles Lambert, 94 F.3d 586, 588-89 (9th Cir. 1996).

5.  **PLAINTIFF'S ALLEGATIONS REGARDING BENNETT"S CONTACTS WITH CALIFORNIA**

Plaintiff alleges that Defendants, including Bennett, legally and/or beneficially own and operate a network of interactive adult websites on the Internet. Opp. at 3. Plaintiff further alleges that Defendants operate a "number of interactive, subscription websites (the "NMS Websites") including celebrity websites comprised of 100% unlicensed or stolen content." Id. Plaintiff further alleges that "(1) Bennett is one of the two founders and the current sole manager of the NMS websites, with both day-to-day and ultimate authority for and control of the websites, (2) Bennett is one of the two beneficial owners of NMS and the websites, and (3) Bennett personally has committed acts involving California that constitute tortious conduct in California . . . ." Opp. at 6.

The facts alleged by Plaintiff are as follows:

(1) Bennett and Elkind created and operated the allegedly infringing interactive celebrity websites through their jointly-owned Florida corporation, Defendant Netvision. Opp. at 6.

(2) After NMS took over management of the websites and network from Netvision, Bennett's personal involvement remained,

and he is the current sole manager of NMS.[2] Id.

(3) Bennett personally decides what content is put on the NMS Websites.

(4) Bennett, on behalf of NMS, contracted with California parties, specifically Babenet, in order to obtain content for the celebrity websites and to negotiate contract deals. Id. at 7.

(5) Bennett is involved in NMS's traffic sharing arrangements with websites in California that contain allegedly infringing content, such as Defendant IGI. Id. at 8.

(6) Customer payment processing for the infringing NMS websites is done in California pursuant to contracts with billing companies chosen by Bennett; Bennett also manages the relationship with the billing companies. Id. at 9.

(7) NMS's referral webmaster list contains over 10,000 entries with California addresses who direct traffic to the NMS Websites through banners and links and receive commission payments from NMS under the Traffic Cash Gold program. Bennett personally directed and negotiated deals with California-based referral webmasters, including those with infringing content challenged in this action. Id. at 9-10.

(8) Many of the NMS celebrity websites include copies of photographs of which Perfect 10 owns the copyright, including photographs of persons who have assigned their rights of publicity to Perfect 10. SAC, at 16.

---

[2]There is some dispute as to whether Bennett is the sole manager, as the Opposition alleges, or the operational manager, as Bennett claimed in his deposition. Opp. at 6.

1    However, all of Plaintiff's allegations regarding Bennett's
2 activities are regarding his role as creator, operator, manager,
3 and owner of Netvision and then of NMS. Opp. at 7. Although
4 Plaintiff alleges that Bennett was personally involved in almost
5 all of the decisions and actions of Netvision and NMS, it does
6 not allege that Bennett conducted any of this business on his
7 personal behalf, but rather on behalf of Netvision and NMS.
8 There is no dispute that personal jurisdiction is proper over
9 NMS. Personal jurisdiction over Bennett is only proper if this
10 Court has jurisdiction over him as a corporate officer or alter
11 ego of NMS.

**6.    ANALYSIS**

    A.    <u>Corporate Officer Liability</u>

Plaintiff does not need to show that Bennett engaged in acts on his own behalf to fulfill the purposeful availment requirement. Instead, Plaintiff may show that Bennett directed, participated in, or authorized such acts on behalf of Netvision or NMS. <u>Smith+Noble v. South Jersey Vinyl, Inc.</u>, No. CV 97-7473-WDK, 1998 U.S. Dist. LEXIS 15930, at *5 (May 11, 1998). A corporate officer may not hide behind the corporate veil and dismiss a case against him for lack of personal jurisdiction if he has engaged in intentional tortious conduct for which he could be held personally liable and the conduct creates contact between the officer and the forum state. <u>Seagate Tech. V. A.J. Kogyo Co. Ltd.</u>, 219 Cal. App. 3d 696, 703-704 (Cal. Ct. App. 1990). Plaintiff alleges that Bennett was personally involved in almost all of the decisions regarding the creation and execution of the celebrity websites that contain the infringing

8

images. Therefore, Bennett's actions on behalf of Netvision and NMS are sufficient to establish corporate officer liability against Bennett.

B. <u>Purposeful Availment</u>

Defendant Bennett argues that his interactions with California are too limited to suffice for minimum contact with the state. Bennett MTD, at 4. He alleges that his "sole contacts with California consist of infrequent and relatively short business trips to California, made in his capacity as Manager for NMS, to call upon vendors or contacts in the adult Internet industry." <u>Id.</u> He also alleges that he had "no knowledge of or involvement in any conduct directed towards Perfect 10." <u>Id.</u> Bennett further alleges that "Perfect 10 has no evidence that Bennett personally direct any activity relating to Perfect 10." <u>Id.</u> at 8.

However, Bennett's deposition testimony belies his position. Bennett testified that he is primarily responsible for the content that is placed on the NMS Websites. Condon Decl., Exh. 4, 38:16-39:6; 41:16-44:8; 55:17-22; 56:14-19, 63:2-64:2; 182:2-184:16; 186:1-189:17; 237:14-238:16; 298:16-300:24; <u>see also</u> Opp. at 7. Furthermore, Bennett testified that he made an oral agreement with Babenet, a California company, to acquire much of the original content for the celebrity websites, including the truecelebs.com, secretcelebs.com, and celebticket.com websites. Condon Decl., Exh. 4, 41:25-45:16; 186:1-188:15. According to emails exchanged between Bennett and IGI, Bennett was also involved in transactions with IGI, a California company, so that IGI could start a celebrity website, www.celebsxxx.com, and use

1 NMS Websites as exit sites. Opp. at 8. Plaintiff alleges that
2 "NMS's referral webmaster list contains over 10,000 entries with
3 California addresses (Declaration of Gary Ancell, Exhs. 1 & 2),
4 who direct traffic to the NMS Websites through banners and links
5 and receive commission payments from NMS under the Traffic Cash
6 Gold program." Opp. at 9. Furthermore, Plaintiff alleges that
7 customer payment processing for the NMS Websites is done in
8 California pursuant to contracts with billing companies chosen
9 and managed by Bennett. Opp. at 9.

10 Under the purposeful availment prong, Plaintiff must allege
11 that Bennett has performed some act or consummated some
12 transaction within the forum or otherwise purposefully availed
13 himself of the privileges of conducting activities in the forum.
14 Bancroft & Masters, Inc. v. Augusta Nat'l, Inc., 223 F.3d 1082,
15 1086 (9th Cir. 2000). One manner in which to prove the
16 purposeful availment prong is the effects test under Calder v.
17 Jones, 465 U.S. 783 (1984). Bancroft & Masters, Inc., 223 F.3d
18 1082 at 1087. Under the "effects test" personal jurisdiction
19 over a non-resident can be "established based on (1) intentional
20 actions (2) expressly aimed at the forum state (3) causing harm,
21 the brunt of which is suffered-and which the defendant knows is
22 likely to be suffered--in the forum state." Id. Plaintiff
23 successfully alleges the first prong of the test, that Bennett
24 engaged in copyright and trademark infringement when he
25 contracted with the California entities and exchanged content
26 that contained Perfect 10's copyrighted images.

27 More problematic is the second prong, which requires that
28 the acts themselves be expressly aimed at the residents in the

10

forum state. Plaintiff has sufficiently alleged that Bennett engaged in acts expressly aimed at California which resulted in the tortious activity. Bennett allegedly contracted with two California companies, Babenet and IGI, which he knew were in California, to obtain and disseminate infringing images. These actions were aimed at California and, if Babenet or IGI was the Plaintiff in this case, Bennett's contacts with those California entities would be sufficient for purposeful availment.

Bennett argues, however, that since his actions were not expressly aimed at Perfect 10 in California the Plaintiff has failed to allege the second prong of the effects test. The connection between the contracts with the California entities and the injury to Perfect 10 is not so attenuated. In examining the underlying purpose of the purposeful availment requirement, this Court finds that Bennett should have reasonably foreseen being haled into court in California given his extensive interactions with California entities including Babenet, IGI, and the California payment processors, and the fact that those interactions led to the proscribed behavior for which he is being sued. This Court finds that the contacts between Bennett and the California entities are sufficient to show that Bennett should have foreseen being haled into court in California based on his activities in California.

Finally, the third element is whether Bennett's actions caused harm to Plaintiff in California. Since Perfect 10 is a California company with its headquarters in California, the brunt of the harm was suffered by Perfect 10 in California. Also, since Bennett contracted with California companies, he

11

should have foreseen that injuries resulting from those contracts would have an effect in California.

Furthermore, this Court finds that the uderlying purpose of the purposeful availment prong has been satisfied. Bennett should have foreseen that his actions with these California entities could have led to him being subject to suit in California. The Ninth Circuit has stated that "there will be cases in which the defendant has not purposefully directed its activities at the forum state, but has created sufficient contacts to allow the state to exercise personal jurisdiction if such exercise is sufficiently reasonable." Ochoa v. J.B. Martin and Sons Farms, Inc., 287 F.3d 1182, 1188 n.2 (9th Cir. 2002). Given Bennett's contacts with California companies which resulted in the injury to Perfect 10, this Court finds the exercise of personal jurisdiction over Bennett proper.

### C. Claims Arise Out of Forum-Related Activities

The second requisite under Doe v. Unocal Corp., 248 F.3d 915, 923 (9th Cir. 2001), is that Plaintiff's claims arise out of or result from Defendant Bennett's forum-related activities. The Ninth Circuit utilizes a "but for" test in determining whether the claims arise out of the non-resident's forum-related activities. Colt Studio, Inc. v. Badpuppy Enter., 75 F. Supp. 2d 1104, 1110 (C.D. Cal. 1999). As such, the determining factor is whether plaintiff would not have suffered the loss but for the defendant's activities. Id.

Plaintiff has alleged that "[b]ut for Bennett's creation and

management of NMS, including obtaining infringing content, his negotiating and entering arrangements with California entities that are essential to NMS and Bennett's business, including its infringing activities, and his control of NMS's California contacts, Perfect 10 would not have been injured by Bennett." Opp. at 20. These allegations are sufficient to show the causal relationship between Bennett's California-related activities and Perfect 10's claims.

### D. Personal Jurisdiction is Reasonable

The final consideration under Doe v. Unocal Corp., 248 F.3d 915, 923 (9th Cir. 2001) is whether exercise of jurisdiction is reasonable. The Ninth Circuit considers seven factors when assessing the reasonableness of jurisdiction: (1) the extent of Defendant's purposeful interjection, (2) the burden on Defendant of defending in the forum, (3) the extent of conflict with the sovereignty of Defendant's state, (4) the forum state's interest in adjudicating the dispute, (5) the most efficient judicial resolution of the case; (6) the importance of the forum to Plaintiff's interest in convenient and effective relief; and (7) the existence of an alternative forum. Panavision Int'l v. Toeppen, 141 F.3d 1316, 1320 (9th Cir. 1998).

The first consideration, Defendant's purposeful interjection into California is easily satisfied by Bennett's contracts with California companies on behalf of Netvision and NMS. The second consideration, the burden on Bennett in defending in California, also weighs in favor of Plantiff since Bennett will most likely

13

serve as a key witness in the trial regardless of whether or not he is a party to the suit. The third consideration is the extent to which the district court's exercise of jurisdiction in California would conflict with the sovereignty of Florida. As in Panavision, such a conflict is not at issue in this case. 141 F.3d at 1323. The federal analysis of copyright and trademark infringement would be same in either Florida or California. Therefore, sovereignty concerns do not weigh in favor of either side. The fourth consideration is the extent of California's interest in maintaining the action. California has a strong interest in providing an effective means of redress for its residents. Panavision, 141 F.3d at 1323. Plaintiff's principal place of business is in California. Further, Plaintiff has asserted California state claims such as unfair competition and false and misleading advertising. Therefore, California has an interest in having this litigation resolved in a California court. The fifth factor focuses on efficient resolution of the case, particularly the location of evidence and witnesses. Since jurisdiction of all of the other defendants in California is proper, it would be inefficient to have a separate trial against Bennett in Florida solely because it would be more convenient to him. Generally, the Court should not give much weight to the sixth factor, the inconvenience of the Plaintiff in litigating in another forum. Panavision, 141 F.3d at 1324. Plaintiff should not have to follow Defendant Bennett to Florida in order to litigate this case. Therefore, to the extent the Court considers this factor, it weighs in favor of a finding that personal jurisdiction is reasonable over

14

Bennett in California. Finally, the seventh and final consideration is whether an alternative forum exists for Plaintiff's claims. Here, an alternative forum does exist; however, Plaintiff would have similar issues in Florida since IGI may not be subject to personal jurisdiction there. Therefore, based on the Court's weighing of these factors, the Court finds that an exercise of personal jurisdiction over Defendant Bennett is reasonable.

### E. RICO Jurisdiction

Plaintiff also argues that personal jurisdiction over Bennett is proper because the RICO statute provides for national service if the Court has personal jurisdiction over one of the defendants and no other jurisdiction can assert personal jurisdiction over all of the defendants. Since the Court finds that personal jurisdiction over Bennett is proper due to his acts as the corporate officer of Netvision and NMS, the Court does not have to reach this issue.

This Court may exercise personal jurisdiction over Defendant Bennett; the Motion to Dismiss based on lack of personal jurisdiction is **DENIED**.

VII. CONCLUSION

Defendant Bennett's Motion to Dismiss based on lack of personal jurisdiction is **DENIED**.

**IT IS SO ORDERED.**

Dated: *August 12, 2003*

LOURDES G. BAIRD
United States District Judge

16